MONDAY v. ELMORE.

1. The difference stated between an attachment issued irregularly and improvidently.

2. Where the affidavit, upon which a warrant to enforce an agricultural lien was issued, states the renting of land by the affiant to the defendant, the giving of a note by defendant, its amount, that it was justly due and payment had been refused, the existence of the debt is sufficiently stated.

3. And where the affidavit further stated that the rent note was due, and that defendants positively refuse to pay the said rent, and are actually disposing of the crops subject to the lien and to defeat the same, the trial justice properly issued the warrant.

4. In attachment proceedings there is no prior existing lien, and the mere disposition of property does not show an intent to defraud; but under an agricultural lien the disposition of property to defeat its lien shows an unlawful intent.

5. Where a rent note is given to two persons, one of whom afterwards dies, the survivor is entitled to the remedies given by law for its collection, no matter who owned the land.

Before ALDRICH, J., Laurens, March 1887.

The contract of rent in this case was as follows:

STATE OF SOUTH CAROLINA—Laurens County. Articles of agreement between Amanda S. and James A. Monday and Lura C. Elmore and Berry Elmore.

We, Amanda S. and James A. Monday, on the first part, do agree to rent our houses and all the cultivatable lands for them to cultivate for the year 1886, for the sum of sixty dollars, to be paid in money on or before the first of November, 1886. We except the wood lands to do with them as we please.

We, Lura C. Elmore and Berry Elmore, the second party, do agree to pay the said Amanda S. and James A. Monday, as specified above, sixty dollars by the first of November, 1886, for the rent of their house and cultivatable lands. We also agree that the crop that is made on the place be bound for the rent specified. We further agree to take good care of the place.

Witness our hand and seal, Nov. 16, 1885.

(Signed)        LURA C. ELMORE,        [L.S.]

(Signed)        BERRY X ELMORE,        [L.S.]
                       his
                      mark.

TEST: A. M. ROBERTSON.

The affidavit upon which the warrant issued was as follows:

STATE OF SOUTH CAROLINA—County of Laurens.—James A. Monday, plaintiff, *v.* Berry Elmore, Lura C. Elmore, defendants.

Personally appeared before me, D. W. Anderson, trial justice for the said county and for the said State, James A. Monday, who, being duly sworn, says: That he, with his wife, Amanda S. Monday, did rent to Berry Elmore and Lura C. Elmore, a certain tract of land in the said county and said State, for the year 1886, to be used for farming purposes during the said current year, taking a lien note to further secure the payment of said rents. That sixty dollars of the said rent is now justly due the said plaintiff, and that the said Berry Elmore and Lura C. Elmore positively refuse to pay him the said rent, and is actually disposing of said crops subject to lien, and to defeat the same to the great injury of deponent. Wherefore he prays that a warrant may be issued to seize said crop.

(Signed)                JAMES A. MONDAY.

Sworn to and subscribed before me, this 2d day of November, 1886.          D. W. ANDERSON, [L.S.]
                    *Trial Justice, L. C.*

Other matters are stated in the opinion of the court.

*Messrs. Ball & Watts*, for appellants.

*Mr. B. D. Cuningham*, contra.

July 8, 1887. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The plaintiff, respondent, and his wife, Amanda, since deceased, in November, 1885, rented to the defendants, appellants, a certain tract of land situate in Laurens County, for the year 1886, for $60, payable on or before the 1st day of November, 1886, the contract being evidenced by a written instrument under seal signed by the said appellants, in which it was stated that the said Amanda and the said James A. Monday had agreed to rent said premises, and that the defendants agreed to pay for the same the sum of $60, by the first day of November, 1886, the defendants further agreeing therein that the crop made on the place should be bound for the rent specified. This paper was properly indexed in the office of R. M. C., Laurens County, November 23, 1885, and a copy will be found in the "Case."

On November 2, 1886, the respondent made an affidavit before D. W. Anderson, trial justice for said county, in substance stating the contract of rent; that the $60 was due him; that the defendants had refused payment, and were actually disposing of the crops subject to the lien, to defeat the same; upon which he prayed a warrant to seize said crop. At that time his wife, Amanda, was dead. The trial justice issued the warrant, and two bales of cotton were seized.

The defendants, through their counsel, after notice, moved the trial justice to dissolve the attachment as improvidently and illegally issued. This motion was refused by the trial justice, and the attachment sustained. Whereupon an appeal was taken to the Court of Common Pleas on the grounds following, to wit: 1. That the attachment was improvidently and illegally issued, the sufficient facts not being set out in the affidavit. 2nd. That it does not appear from the affidavit that the plaintiff had a right of action. And 3rd. That the evidence showed the plaintiff had no right of action. The Circuit Judge dismissed this appeal with costs. And the case is now before this court upon exceptions as follows: I. That the affidavit on which the attachment was issued was insufficient. II. That his honor did not sustain the appeal on the grounds that the attachment was improvidently and illegally issued, the facts stated not being sufficient. III.

Because it did not appear from the affidavit that the plaintiff had a cause of action.

The act of 1885, p. 429, provides that a warrant of seizure under agricultural liens issued by the clerk of the court or a trial justice, may be dissolved or vacated for any of the causes which would be sufficient to vacate a warrant of attachment issued under the code. An attachment issued under the code may be dissolved for one of two causes; first, because the attachment has been irregularly issued, and second, because it has been improvidently issued. The difference between these causes is this: an attachment is irregularly issued when it appears upon the face of the proceedings that there is no ground for the attachment—in other words, where the affidavit fails to contain the conditions upon which the law authorizes such a proceeding, to wit, that a cause of action exists, that a certain sum is due, and that the defendant has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, any of his property with intent to defraud his creditors. It is improvidently issued when the conditions necessary are stated, but they are untrue, which fact being shown by the defendant, the attachment may be dissolved. *Ivy* v. *Caston,* 21 *S. C.*, 588.

From the language of the exceptions here, we suppose that the warrant of seizure issued in this case is assailed upon both of the grounds mentioned. The first exception raises the question whether the facts stated in the affidavit were sufficient. The third and last whether a cause of action is stated therein. These two exceptions are based upon irregularity, to wit, that the necessary facts do not appear upon the face of the proceedings—the first alleging irregularity generally, and the second specifically, to wit, the absence of one of the necessary conditions—the existence of a cause of action.

The second exception is founded upon an averment that the attachment was "improvidently and illegally" issued. We suppose this exception was intended to raise the question that the facts stated were untrue, because it is only in such case that an attachment can be said to have been improvidently issued, although appended to this exception is the statement: "The facts stated not being sufficient"—the exception as a whole reading

thus: "That his honor did not sustain the appeal on the grounds that the attachment was improvidently and illegally issued, the facts stated not being sufficient." If the last clause was intended to qualify the foregoing part of the exception, then this exception does no more than raise the question of the other two, to wit, of irregularity appearing on the face of the proceedings, and it would be disposed of in the discussion of the other two. But if full significance is to be given to the words "improvidently and illegally," which are the words used in the act of 1885, *supra,* then it will be necessary to inquire whether the defendants submitted sufficient evidence of the untruthfulness of the facts stated in the affidavit.

The first question, however, is, was the proceeding defective for irregularity? Does it appear that the affidavit was deficient either generally or specifically? All that the code requires to be stated for the issuance of an attachment so as to avoid successfully an assault for irregularity is, that a cause of action exists as against the defendant, specifying the amount of the claim, &c., and that the defendant has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, any of his property, with intent to defraud his creditors. *Code,* 248; *Ivy* v. *Caston, supra.* The affidavit, it is true, does not state in terms that a cause of action existed, but it does state facts from which as a legal conclusion it must be inferred that such cause did exist. It states the renting of the land, the giving of the note, its amount, that said note was just and due the plaintiff, and that the defendants had positively refused payment. If these statements were true, it cannot be said that the proceeding was defective for "irregularity" on account of failure of the necessary statement as to these matters. We do not know that it was necessary for it to appear in the affidavit that the plaintiff was the surviving payee, and for that reason was entitled to collect the rent. The statement that the note was due to him, was an allegation of a cause of action to him, and it opened the door to testimony on that subject at the trial in case this right was denied.

The most serious question is whether the affidavit was sufficient as to the purpose of the defendants in disposing of the property. The code says that an attachment may issue whenever it

shall appear by affidavit that * * * the defendant is disposing of his property * * * "with intent to defraud his creditors." This precise language is not used in the affidavit, but is not that the charge substantially? The affidavit is not based upon hearsay, information, or belief, but it is a positive oath that the rent note was due, that the defendants were actually disposing of their property, that they had refused payment, and that the object of the disposition was to defeat the lien. It appears to us that this was equivalent to saying that the intent of the defendants was to defraud a creditor.

The cases in our reports upon this subject are *Smith & Melton* v. *Walker*, 6 *S. C.*, 169; *Brown* v. *Morris*, 10 *Id.*, 469; *Claussen* v. *Fultz*, 13 *Id.*, 478; *Ivy* v. *Caston*, 21 *Id.*, 588; and a recent case, *Mixon* v. *Holley*, 26 *Id.*, 256. In the four first cases above, the sufficiency of the affidavit, and what is required in such cases were discussed, the court holding that the facts stated must not be stated simply upon information and belief, but that there must be a positive averment of the facts and of the sources from which the information is derived, if the statement is made on information, and that there must be facts stated bearing upon both the conditions of the disposition of the property and the intent thereof. And in the last case above the affidavit was very similar to the affidavit here, where it was stated that Mixon had sold a portion of his property and had refused to pay the note with intent to defeat the lien. The court held that it was sufficient, saying: "The fact that Mixon having already sold a portion of the crop, over which Willis & Co. had a lien, and having refused to pay the proceeds or any other funds upon their claim, was sufficient to satisfy the clerk of the intent of Mixon, and no higher evidence could have been furnished that Mixon intended to defeat the lien." The affidavit in that case was, "that Mixon had sold a portion of his crop, had refused to pay said sum of $100, with intent to defeat the lien." This was held sufficient; and so we hold here under these authorities.

It must be remembered that this was a proceeding upon an agricultural lien, and while this lien law does provide that the affidavit for a warrant of seizure in such cases should "conform as nearly as may be" to the practice in ordinary attachments, yet

there is this material distinction between the two.    In attachment cases there is no lien on the property attached, which it is intended to enforce, and consequently the mere disposition of the property might not in itself perhaps be a sufficient statement showing the intent to defraud.    But in agricultural contracts there is a lien, and a statement that the debtor is disposing of the property to defeat this lien, contains facts bearing directly on the intent.

We find no evidence in the case directed to the point of an improvident issuance of the warrant.    The only testimony was from the defendant, Laura C. Elmore, that Amanda Monday had died some time in September, 1886, and that she owned the land in fee.    The note, however, was given to Amanda and the plaintiff, and it makes no difference who owned the land, the defendants were never deprived of the use of it, and the proof that Amanda had died only showed that the plaintiff was the survivor, and therefore had the right to collect.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.