## SIMON v. TEMPLE LUMBER CO.

(Court of Civil Appeals of Texas. Galveston. April 10, 1912.)

1. ATTACHMENT (§ 118*)—AFFIDAVITS—SUFFICIENCY.

An affidavit in attachment that defendant is justly indebted to plaintiff on a customer's draft for $564, dated October 14, 1910, due and payable at sight and now long since due, that such draft is fully set out in plaintiff's petition, and reference made thereto for a full description, was sufficient under Rev. St. 1895, art. 186, subd. 1, requiring that the affidavit state that the defendant was justly indebted, and the amount.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 211–213; Dec. Dig. § 118.*]

2. APPEARANCE (§ 19*)—JURISDICTION.

Where attachment was levied on the property of a nonresident, and service was had on him under the statute by notice served on him in another state, and he filed a motion to quash the attachment and appeared and filed an answer, jurisdiction was complete as though he had been served within the state, and did not depend upon the attachment.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 79–90; Dec. Dig. § 19.*]

3. PRINCIPAL AND AGENT (§ 119*)—AUTHORITY OF AGENT—NEGOTIABLE INSTRUMENTS—BURDEN OF PROOF.

Where, in an action on a draft, a plea non est factum was filed, the burden was on plaintiff to establish that a person who executed it as the agent of defendant had authority to do so.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391–401; Dec. Dig. § 119.*]

4. PRINCIPAL AND AGENT (§ 123*)—AUTHORITY OF AGENT—NEGOTIABLE INSTRUMENTS—SUFFICIENCY OF EVIDENCE.

In an action on a draft, executed by one as defendant's agent, defendant denying the agency, testimony of an attorney for plaintiff that he presented the draft to defendant and asked him if it was his, and he said it was, but that he had stopped payment of it, did not show an admission of liability on the draft, and was insufficient to rebut positive testimony of defendant and his authorized agent that the person signing had no authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

Appeal from District Court, Sabine County; W. B. Powell, Judge.

Action by the Temple Lumber Company against Phil Simon. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Hamilton & Minton, of Hemphill, for appellant.

REESE, J. In this case, the Temple Lumber Company sued Phil Simon on a draft for $564.82, alleged to have been drawn by defendant in favor of plaintiff on the Brookland State Bank. On presentation, payment was refused. A trial, without a jury, resulted in a judgment for plaintiff for the amount sued for, from which defendant appeals.

Appellant is a resident of the state of Louisiana. At the time of the institution of the suit, appellee sued out an attachment, which was levied upon his property in Texas, which was afterwards replevied by him. In addition, service was had upon appellant, under the statute, by notice served upon him in Louisiana. Appellant filed a motion to quash the attachment, and also appeared and filed an answer, consisting of a general demurrer and special exception, and specially denying that the draft sued ·on was executed by him, or by any one authorized by him, which special denial was duly sworn to. The draft sued upon is as follows: "Phil Simon. General Merchandise. Brookland, Texas, Oct. 14, 1910. Pay to the order of Temple Lumber Co. $564.82. Five hundred sixty-four and 82/100 dollars. To the Brookland State Bank. Phil Simon, per M. B. Simon."

Phil Simon had a store at Brookland, which was in charge of his brother, H. Simon, as general manager. Another brother, M. B. Simon, was bookkeeper. M. B. Simon and C. N. Cummings were also conducting a lumber business under the name of the Texas Hardwood Lumber Company. There is no evidence that Phil Simon ever had any interest in this concern. The Texas Hardwood Lumber Company was indebted to the Temple Lumber Company in the amount of the draft sued on, and on October 14, 1910, M. B. Simon drew the draft sued on and sent it to the Temple Lumber Company to cover the amount of the debt of the Hardwood Lumber Company. The draft was made on a printed blank, in which the name of Phil Simon was printed, with a blank after the word "per" for the name of the person issuing it as agent, in the present case M. B. Simon. Both H. and M. B. Simon testified that H. Simon was in exclusive control of the business as agent of Phil Simon, and that M. B. Simon was the bookkeeper, and had no authority to issue drafts in the name of Phil Simon, except when specially directed to do so by H. Simon. They both also testified that this draft was issued by M. B. Simon, as aforesaid, without the knowledge or authority of H. Simon. The night of the day it was issued the mill and other property of the Hardwood Lumber Company was burned. M. B. Simon told H. Simon that he had issued this draft and sent it to the Temple Lumber Company, expecting that he would get the money to make it good before the draft was presented to the bank, but that now he could not do so, and it was up to H. Simon to protect Phil Simon, which H. Simon at once did by notifying the bank not to pay it. It was shown that once before this the Temple Lumber Company had received a similar draft for a small amount in payment of an account against the Hardwood Lumber Company, which had been paid, but with regard to this H. Simon and M. B. Simon testified that this draft had been sold to M. B. Simon for cash.

After the suit was filed, A. E. Davis, attorney for the Temple Lumber Company, went to De Ridder, La., to see Phil Simon about it, taking the draft. His testimony as to this is as follows: "I pulled the draft from my pocket and handed it to Phil Simon, and the first question I asked him was, was this his draft, and he said it was, but that he had stopped payment of it. I will state further that at the time I presented this draft to Phil Simon for payment he examined the draft carefully before he said it was his draft." This was all the evidence offered to show that the draft was issued by the authority of appellant, or to rebut the testimony of H. Simon and M. B. Simon.

In declaring upon the draft in its petition, it was alleged that it was executed by Phil Simon, through his duly authorized agent, M. B. Simon. There follows a copy of the draft,

146 S.W.—38

in which the signature of the agent was W. B. Simon. By an amended petition, it was alleged that it was impossible to tell whether the name signed to the draft, after the word "per," was M. B. Simon or W. B. Simon, but that in fact the draft was executed by M. B. Simon, as agent for Phil Simon.

[1] The court did not err in overruling appellant's motion to quash the attachment, as set out in the first assignment of error. The affidavit for the attachment describes the debt sued on as follows: "That Phil Simon, the defendant, is justly indebted to the plaintiff on certain customer's draft in the sum of $564.82; that said customer's draft is dated October 14, 1910, and was due and payable at sight, and is now and has been long since due; that said customer's draft is fully set out in plaintiff's original petition above, and reference is here made to the petition for a full and complete description of said customer's draft." The affidavit followed the petition which was not sworn to. Rev. St. art. 186, subd. 1; La Force v. Dry Goods Co., 8 Tex. Civ. App. 572, 29 S. W. 75.

[2] We think the affidavit was in substantial compliance with the statute. Appellant is in error, however, in his contention that the jurisdiction depends upon the attachment. Appellant having appeared, and by his answer submitted to the jurisdiction, after having been served with the notice in Louisiana, the court's jurisdiction was as complete as though he had been served with process in Texas.

The second assignment of error presents the proposition that the court erred in rendering judgment for plaintiff, because the judgment is contrary to the evidence, and is not supported by the evidence, and because the evidence does not show that the defendant, Phil Simon, executed the draft, or that it was executed by his duly authorized agent.

[3, 4] We think this assignment must be sustained. A proper plea of non est factum having been filed, the burden of proof was upon appellee to establish that M. B. Simon, who, as appeared on the face of the draft, executed it as the agent of Phil Simon, had authority to do so. To rebut the positive statements of H. Simon and M. B. Simon that M. B. Simon had no authority and the corroborating circumstance, undisputed, that the draft was to pay the debt of the Hardwood Lumber Company—that is, the debt of M. B. Simon—with which Phil Simon had no connection, appellee offered only the evidence of A. E. Davis, which has been set out. We think the statement of Phil Simon, made to Davis, cannot be taken as an admission that he recognized the draft as binding on him, or the authority of M. B. Simon to execute it as his agent, nor as a ratification of such act, if not previously authorized. The statement was accompanied by the further statement that he had stopped payment on the draft. He had stopped payment, because it was not executed by his authority. This

involved a denial of his liability, although it might have been in some sense his draft, inasmuch as it had his name signed to it. Taking his entire statement, it amounts to no more than that the draft was in his name; but he was not liable on it, because not authorized by him. It is clear that it was not intended by Phil Simon in one breath to admit his liability, and in the next to deny it. Of course, if this evidence was sufficient to authorize the conclusion that M. B. Simon was authorized to execute the draft, the trial court, sitting as a jury to judge of the credibility of the witnesses, might have discredited the testimony of H. and M. B. Simon and rendered judgment on this testimony of Davis. But the trouble is that the statement made by Phil Simon to Davis is not in itself sufficient to establish the fact sought to be proven. There was no evidence to authorize the conclusion that there was any apparent authority in M. B. Simon to draw the draft upon which appellee relied. They parted with nothing upon receipt of the draft. They simply deposited it for collection, and, payment being refused, bring this suit. The issue of estoppel does not arise, either upon the pleadings or the evidence.

We have examined the other assignments of error presented in the brief, and our conclusion is that they are not well taken.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.